IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHARON BRAINARD,                                       3:11-CV-00809 RE

                    Plaintiff,                         **OPINION AND ORDER**

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

**REDDEN**, Judge:

Plaintiff Sharon Brainard ("Brainard") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this matter is remanded for the calculation and payment of benefits.

1 - OPINION AND ORDER

## BACKGROUND

Born in 1965, Brainard completed the ninth grade, and has worked as a bartender, janitor, and cook/stocker. In December 2007, Brainard filed applications for a period of disability and SSI benefits, alleging disability since June 1, 2007, due to uncontrolled diabetes, liver disease, kidney problems, Hepatitis C, arthritis, depression, and cysts. Tr. 190. Her application was denied initially and upon reconsideration. After a July 2009 hearing, an Administrative Law Judge ("ALJ") found her not disabled. Brainard's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Brainard had the medically determinable severe impairments of Hepatitis C, insulin dependent diabetes mellitus, poorly controlled, and depression. Tr. 56.

The ALJ determined that Brainard retained the residual functional capacity to perform a limited range of medium work. Tr. 18.

The ALJ found that Brainard was able to return to her past relevant work as a janitor and cook/stocker. Tr. 64.

The medical records accurately set out Brainard's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Brainard contends that the ALJ erred by: (1) failing to find ovarian cysts a severe impairment at step two; and (2) finding her not fully credible

2 - OPINION AND ORDER

## I. Step Two

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 US 137, 140-41 (1987). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508.

The ALJ properly determined that Brainard had severe impairments at step two and continued the analysis. Any error in failing to identify other limitations as "severe" at step two is therefore harmless.

## II. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995).

However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (l) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F.3d at 1282.

The ALJ found that Brainard's allegations as to the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they are inconsistent with the RFC assessment. Tr. 59. Brainard testified that she could be up for 30 minutes at a time, that she needs three rest breaks of up to 45 minutes each daily, her abdomen hurt, and her blood sugar, nausea, blurred vision and fatigue increased monthly with her menstrual cycle. Tr. 31-34, 44-45.

A. Daily Living Activities

The ALJ found that Brainard's daily activities contradict her allegation of disabling pain and fatigue. The ALJ noted that Brainard cares for her personal needs, uses public transportation, can prepare meals and shop for groceries. The ALJ cited Brainard's assertion that she does housekeeping and folds laundry. She can use a telephone and phone book, and attends Bible study for forty-five minutes weekly. Brainhard enjoys reading but becomes fatigued, attends church and watches television. Tr. 57. She has attended a soccer game and eats at a restaurant occasionally.

None of the activities identified by Brainard are inconsistent with her allegations regarding pain and fatigue.

B. Testimony Regarding Alcohol

Brainard testified that quit drinking alcohol in May 2005, but did drink at her son's June 2006 wedding. Tr. 37-8, 61. The ALJ cited a December 2006 record in which Brainard wrote she was an "occasional" drinker. That is not inconsistent.

The ALJ noted a January 2008 document in which Brainard said she had received a coin commemorating 20 years of sobriety. Read in context, Brainard was apparently referring to

sobriety from drug use. Tr. 608. To the extent that Brainard's reports of alcohol use are not entirely consistent, they do not constitute a clear and convincing reason to find her not credible.

C. Objective Medical Evidence

The Commissioner argues that the ALJ properly relied on the medical evidence, citing the reports of Drs. Bates-Smith and Ellison, and the four non-examining medical consultants.

Dr. Bates-Smith recorded Brainard's reports of fatigue. Dr. Bates-Smith found Brainard a "good historian," and diagnosed Major Depressive Disorder. Tr. 383. Dr. Bates-Smith did not indicate that Brainard's claim of pain and fatigue is not credible.

Dr. Ellison performed a general physical examination. Tr. 376-78. He noted Brainard's complaints of abdominal pain, fatigue, and depression. He wrote that she seldom drove because of poor vision, and that fatigue limited her physical activity "to some degree." Tr. 376. Dr. Ellison found her abdomen "tender right upper quadrant," and back "right CVA percussion tenderness." Tr. 377. He diagnosed Chronic hepatitis C with right abdominal/back pain and fatigue, chronic depression, and insulin-dependent diabetes mellitus, poorly controlled. Tr. 378. His report does not contradict Brainard's credibility.

The Commissioner argues that the ALJ properly credited the four non-examining medical consultants. The ALJ noted that Brainard was treated by naturopathic physician Maki Aoki, N.D. The ALJ did not mention the April 2008 letter in which Dr. Aoki states that he has treated Brainard since May 2007, and that "damage to these organs [live and kidney] caused by her chronic disease processes create multiple systemic symptoms that she experiences on a daily basis. These symptoms include fatigue, pain, easy bruising and bleeding, headaches, blurred vision as well as nausea." Tr. 426. In February 2009 Dr. Aoki stated that she had "multiple,

progressing chronic diseases" and that Brainard "continues to experience significant symptoms including fatigue and pain." Tr. 163. Dr. Aoki coordinated Brainard's care with Tanya Page, M.D., who reported in July 2009 that Brained had "multiple medical conditions that cause fatigue, and may require the ability to take frequent breaks...." Tr. 620.

In light of the opinions of the treating physicians, the ALJ's reliance on the non-examining physicians did not constitute clear and convincing reasons to find the claimant not credible.

## III. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true"

doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in

determining whether to enter an award of benefits upon reversing the Commissioner's decision.

*Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir.

2003)(en banc)).  The reviewing court should decline to credit testimony when "outstanding

issues" remain.  *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

      The ALJ's  failure to credit the opinions of the two treating physicians and the testimony

of the claimant is erroneous for the reasons set out above.  The Vocational Expert testified that, if

the opinions are credited, and Brainard's conditions would require her to rest for more than two

unscheduled, ten minute breaks each day, Brainard would be unable to maintain employment.

Tr. 47.

## CONCLUSION

      The ALJ's decision is not supported by substantial evidence.  This matter is reversed and

remanded for the calculation and payment of benefits.

      IT IS SO ORDERED.

      Dated this _/ ⁊_ day of August, 2012.



                                     JAMES A. REDDEN
                                     United States District Judge

8  - OPINION AND ORDER